UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14019-CR-ROSENBERG

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

CHRISTOPHER FABRISIO JIMENEZ,
        Defendant.
_____/

**ORDER SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANT'S OBJECTIONS TO THE PSI**

This Cause comes before the Court upon the Defendant's Objections [DE 100] to the Pre-Sentence Investigation Report ("PSI") [DE 104]. The Government seeks two enhancements to Defendant's sentence: Four points under U.S.S.G. § 2G2.1(b)(2)(B) and five points under § 4B1.5(b), to which the Defendant objects. The Court held a hearing on March 24, 2022 (citations as "Hrg. Tr."). The Court has reviewed the PSI, Defendant's Objections, and is otherwise fully apprised of the premises. For the following reasons, the Defendant's Objections are **SUSTAINED** as to the four- and five-point enhancements, but Defendant's Objections are **OVERRULED** as to the two-point enhancement under § 2G2.1(b)(2)(A).

### I. BACKGROUND

The Court first wishes to inform the reader that the following facts and analysis contain explicit references to sexual assault.

The Government has established the following facts by a preponderance of the evidence. In the early morning hours of January 20, 2020, Defendant, 19, picked up his friend, M.S., 14, and

1

drove to the victim's house, arriving there at approximately 12:30 in the morning. On the way there, Defendant stated that he was going "to pick up a bitch." DE 104 at 5. When they arrived at the victim's house, M.S. realized that they were picking up the victim. He then told Defendant that the victim was in the ninth grade. Defendant replied, "I don't care."

The victim then got into Defendant's car, whereafter the three of them drove for some 20 minutes or so to the Port St. Lucie area. Sometime between being picked up and driving to Port St. Lucie, the victim drank some alcohol, which M.S. offered her. Testimony at the Hearing established that M.S. got the alcohol from the trunk of Defendant's car and that Defendant kept a bottle of yellow-ish liquid in his trunk. Hrg. Tr. 103:15-25.

According to the PSI and consistent with the evidence presented at the hearing, Defendant then dropped M.S. off at a gas station and drove off with the victim. Defendant and the victim were gone for 20-30 minutes. When Defendant returned to pick up M.S. from the gas station, the victim was unconscious and vomiting in the back seat. From the gas station, Defendant drove M.S. and the victim to an unidentified parking lot. M.S. got out of the car and hung out with friends; Defendant got into the backseat with the victim who lay unconscious.

At this point, Defendant then recorded the video which is the subject of Defendant's conviction. The video first depicts Defendant, who is looking at the camera and recording from the selfie perspective. Defendant then pans to the victim, lying unconscious, whose pants and underwear have been removed. The video then focuses on the victim's bare vagina. The video then shows the defendant's exposed, erect penis which is covered with a condom, and pans back to the victim's vagina, at which point the video ends. Shortly thereafter, Defendant transmitted that video via Snapchat to several individuals. Defendant then sexually assaulted the victim while she lay

2

unconscious in the backseat of the car.

Defendant and M.S. then drove the victim to her home and dropped her off down the street. The victim woke up the following morning with no recollection of the prior evening after taking that first drink. She continued to experience symptoms of gastrointestinal upset, vomiting several times that morning. The following day, the victim reported the incident to the local police department, where she was physically evaluated and interviewed by the officers. The physical examination revealed a hickey on her breast. Because the victim had showered in between the assault and being physically evaluated, the officers found no other biological evidence from the Defendant on the victim's person.

After the assault, Defendant told at least three people that he had sex with the victim. He told M.S., and two other persons, D.W. and Travis. Additionally, the Snapchat video, which is the subject of this prosecution, had been disseminated to and among many students at the victim's school.

On October 26, 2021, Defendant pleaded guilty to one count of production of child pornography and one count of distribution of child pornography. The Government now seeks to impose two enhancements, in addition to others which are not the subject of this Order, to the Defendant's sentence.

## II.   DISCUSSION

The Government seeks to impose the following enhancements: a four-point enhancement under U.S.S.G. § 2G2.1(b)(2)(B), *Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material*, and a five-point enhancement under § 4B1.5, *Repeat and Dangerous Sex Offender Against Minors*.

### A. Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material

Section 2G2.1(b)(2)(B) provides,

> (Apply the greater) If the offense involved—
> (B) (i) the commission of a sexual act; and (ii) conduct described in 18 U.S.C. § 2241(a) or (b), increase by 4 levels.

A sexual act is defined by reference to 18 U.S.C. § 2246(2) as,

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Title 18 Section 2241(b)[1] provides, in relevant part:

> Whoever, in the . . . territorial jurisdiction of the United States . . . , knowingly—
> (1) renders another person unconscious and thereby engages in a sexual act with that other person; or
> (2) administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby—
> (A) substantially impairs the ability of that other person to appraise or control conduct; and
> (B) engages in a sexual act with that other person.

In short, the Government must show, by a preponderance of the evidence, that Defendant engaged in a sexual act and did so by rendering the victim unconscious (or by forcibly administering an intoxicant to her that substantially impaired her executive function). The Government argues that

---

[1] The Government seeks the enhancement under § 2241(b) only; they make no argument under subsection (a). As such, the Court conducts its analysis only under subsection (b).

based on the facts stated above, Defendant should receive a four-point enhancement under 2G2.1(b)(2)(B) because (1) Defendant engaged in a sexual act with the victim (thereby satisfying 2G2.1(b)(2)(B)(i)) and (2) he rendered her unconscious by giving her alcohol (satisfying 2G2.1(b)(1)(B)(ii)).

The Court agrees with the Government as to romanette (i): the Defendant engaged in a sexual act with the victim. Both subsections (A) and (D) of 18 U.S.C. § 2246(2) are met here. Subsection (A) provides that a sexual act may consist of "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." Although there is no explicit portrayal of the victim's assault in the Snapchat video, the content and tenor of the video are enough to establish that the Defendant vaginally penetrated the victim without her consent. In the back of the car, he forcibly removed the victim's pants and underwear as she lay unconscious and unresponsive. Before assaulting her, he decided to memorialize the assault by taking a video—a video that depicts the victim's naked vagina, and then immediately pans to the Defendant's erect penis, which is mere inches away from the victim's groin. Defendant also went to the lengths of putting a condom on. The implications of the video are grotesquely clear: Defendant intended to, and did, sexually assault the victim.

Furthermore, this finding is confirmed by statements of the Defendant himself: he bragged to at least three people that he had sex with the victim. The Court hereby finds that the Defendant had vaginally penetrative, non-consensual sex with the victim, satisfying the statutory definition of "sexual act" under 18 U.S.C. § 2246(2)(A).

Subsection (D) is also satisfied. Defendant engaged in "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years

5

with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Undoubtedly, Defendant had to have touched the victim's genital region in order to strip her pants and underwear off her body, seeing as the victim was unresponsive. The Defendant intentionally touched the victim, who was 14 years old at the time, for his own sexual gratification. Either way you look at it, Defendant committed a non-consensual sexual act against the victim, satisfying the first prong of 2G2.1(b)(2)(B).

However, the Court does not find that romanette (ii) is satisfied. In order to satisfy romanette (ii), the Government must show, by a preponderance of the evidence, that Defendant either "render[ed] the victim unconscious" and then engaged in a sexual act with her or that he "administer[ed] to [the victim] by force or threat of force, or without the [victim's] knowledge or permission," an intoxicant that "substantially impaired the [victim's] ability . . . to appraise or control conduct" and thereafter engaged in a sexual act with her. The Court incorporates its reasoning from above that the Defendant engaged in a sexual act with the victim. But the Court is not satisfied that the Defendant "rendered" the victim unconscious or administered an intoxicant by force or threat of force or without the victim's knowledge or permission.

The Court must first understand the plain meaning of the word "render." Render means to "to cause to be or become; to make." Merriam-Webster's Collegiate Dictionary 990 (10th Ed. 1993). So then what does it mean to "render" someone unconscious? Certain images likely come to mind: someone being physically knocked out or drugged. The Application Note for § 2G2.1(b)(2) confirms this understanding, stating, "[t]his provision would apply, for example, if any dangerous weapon was used or brandished." U.S.S.G. § 2G2.1(b)(2) App. Note 2. In any of the examples, the defendant acts affirmatively to cause or bring about the victim's

6

unconsciousness. So, too, must be the case here. This understanding of the statute comports with the plain meaning of the word "render."

Here, there is insufficient evidence to conclude that Defendant affirmatively acted to cause the victim's unconsciousness. On one hand, Defendant provided the alcohol for M.S. and the victim. Certainly, without the alcohol, the victim would not have fallen unconscious. On the other hand, M.S. is the one who handed the victim the alcohol. The victim began drinking on the driveway of her own volition. If the evidence had established, for example, that the Defendant had pressured the victim or drink or even served her the alcohol, there would be a stronger causal link between his conduct and her unconsciousness. But the Court simply has no evidence to concretely link the Defendant's to the victim's unconsciousness beyond simply bringing the alcohol.

As to 18 U.S.C. 2241(b)(2), the evidence likewise does not establish that the Defendant forced the victim to consume alcohol or that he otherwise administered a drug or intoxicant to her without her knowledge or permission. Indeed, testimony of M.S. establishes that the victim began drinking of her own volition. If the Defendant pressured her to drink at some later point in the evening, the Court has no evidence of it. Accordingly, the elements of 18 U.S.C. § 2241(b) are not satisfied. A four-point enhancement under U.S.S.G. § 2G2.1(b)(2)(B) is not justified.

However, a two-point enhancement under §2G2.1(b)(2)(A) is warranted. Subsection (b)(2)(A) provides, "If the offense involved . . . the commission of a sexual act or sexual contact, increase by 2 levels." As the Court noted above, the Government established by a preponderance of the evidence that the Defendant engaged in the commission of a sexual act. The Defendant disputes this notion. Assuming *arguendo* that Defendant is right, a sexual contact nevertheless took place. "Sexual contact" is defined by 18 U.S.C. § 2246(3), which provides, "the term 'sexual

7

contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Here, Defendant removed the victim's pants and underwear during the course of the assault. While doing so, he touched her buttocks, groin, and inner thigh. Though this preceded the actual recording of the Snapchat video, it was necessarily part of the offense conduct, and it was necessarily for the purpose of the Defendant's sexual gratification. Without forcibly removing her clothes, the Defendant could not have produced the pornographic video. Accordingly, a two-point enhancement shall apply under § 2G2.1(b)(2)(A) because the Government has established that both sexual contact and a sexual act occurred.

### B. Repeat and Dangerous Sex Offender Against Minors

The Government also seeks a five-point enhancement pursuant to § 4B1.5(b). In relevant part, § 4B1.5(b) provides, "In any case in which the defendant's instant offense of conviction is a covered sex crime, . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct . . .The offense level shall be 5 plus the offense level determined under Chapters Two and Three." The key words for this enhancement are "the defendant engaged in a *pattern* of activity involving prohibited sexual conduct." The Guideline provides a definition for "pattern of activity": "the defendant engaged in a pattern of activity involving prohibited sexual conduct *if on at least two separate occasions*, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5 App. Note 4(B)(i) (emphasis added). This, of course, raises the question of what "separate occasions" means.

The Government argues that because the Defendant perpetrated two different sexual acts

8

against the victim—producing the snapchat video and then assaulting the victim—these acts also constitute separate *occasions*. In other words, under the Government's interpretation, an act is synonymous with an occasion. But this is a false equivalency. Indeed, this strained interpretation defies the plain meaning of the statute.

The ordinary meaning of the word "occasion" refers to an event, occurrence, or happening. *See, e.g.*, American Heritage Dictionary Online (5th Ed. 2022); Merriam-Webster's Collegiate Dictionary 803 (10th Ed. 1993); Webster's Third New International Dictionary 1560 (1986). Events, occurrences, or happenings—which is to say occasions—may themselves consist of multiple actions or "temporally distinct activities." *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022). This is to say that occasions are not synonymous with discrete actions; occasions may instead encompass a series of actions or conduct.

This is consistent with the use of "occasion" in its statutory context. Congress deemed that the defendant must engage in prohibited sexual conduct "on at least two separate occasions" to establish a pattern of activity. So now that we understand what "occasions" means, we must ask what is meant by "*separate* occasions." Separate occasions in this context means that the proscribed activity must have occurred twice, and that those occurrences were separated by space, or time, or both. Furthermore, a "pattern of activity" suggests repeat or similar conduct over an extended period of time. Certainly, a pattern is not concretely established over the course of 15 to 20 minutes, but rather over the course of hours, days, weeks, or months. But a pattern of activity is not established by two consecutive acts, separated only by mere minutes, despite the Government's insistence.

9

Additionally, the Court's recent decision in *Wooden v. United States*, 142 S. Ct. 1063 (2022), is instructive. In *Wooden*, the Supreme Court interpreted the kindred phrase "occasions different from one another" in the context of the Armed Career Criminal Act ("ACCA"). Although the Court interpreted the word "occasions" in the context of a different statute, the Court's plain meaning analysis is nevertheless persuasive here.

In short, when identifying whether crimes were committed on different occasions, "offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events." *Wooden*, 142 S. Ct. at 1071. Proximity of location is material, too: "the further away crimes take place, the less likely they are components of the same criminal event." *Id.*

The Court also offered a helpful illustration: "A barroom brawl breaks out, and a patron hits first one, then another, and then a third of his fellow drinkers. The Government maintains those are not just three offenses (assaults) but also three 'occasions' because they happened seriatim. But in making the leap from three offenses to three occasions, based on a split-second separation between punches, the Government leaves ordinary language behind. The occasion in the hypothetical is the barroom brawl, not each individual fisticuff." *Id.* at 1070 (cleaned up).

The same is true here. The video and the assault were distinct offenses, to be sure. But they were not separate *occasions* within the plain meaning of the statute. Rather, they are distinct offenses that comprise a single occasion. This is because the two offenses take place mere moments from one another and in the same location. If the Defendant had, say, re-transmitted the video again the following day after returning home, that may be enough to constitute a separate occasion. But because the video and the assault happened consecutively, the Government has failed to show

10

that on at least two separate occasions, the Defendant prohibited sexual conduct with a minor. Accordingly, a five-point enhancement under § 4B1.5 is not appropriate here.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that the Defendant's Objections to the PSI are **SUSTAINED** insofar as the four-point enhancement under § 2G2.1(b)(2)(B) and the five-point enhancement under § 4B1.5 do not apply. But the objections are **OVERRULED** insofar as a two-point enhancement pursuant to § 2G2.1(b)(2)(A) is warranted.

**DONE AND ORDERED** in chambers in West Palm Beach, Florida, this 4th day of April, 2022.

_____
Robin L. Rosenberg
UNITED STATES DISTRICT JUDGE